RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1018-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

J.R.B.,

 Defendant-Appellant.
_____________________________

IN THE MATTER OF J.R.B., Jr.
and M.B.,

 Minors.
_____________________________

 Submitted May 23, 2017 – Decided June 30, 2017

 Before Judges Yannotti and Gilson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Hudson County, Family Part,
 Docket No. FN-09-0351-13.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Mary Potter, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Joyce
 Calefati Booth, Deputy Attorney General, on
 the brief).
 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minors (Melissa R.
 Vance, Assistant Deputy Public Defender, on
 the brief).

PER CURIAM

 Defendant J.R.B. appeals from an August 7, 2013 order finding

that he abused or neglected his two minor children when he was

arrested and incarcerated on a charge of distributing narcotics.

We reverse because there was insufficient evidence to establish

that defendant's alleged actions placed his children at

substantial risk of harm.

 I.

 The claims of abuse or neglect against J.R.B. (Jerry) 1 arose

from his arrest on April 1, 2013. Jerry and M.L. (Martha) lived

together with their two children, J.R.B., Jr. (Junior), a son born

in November 2009, and M.B. (Margaret), a daughter born in February

2013. In early 2013, Martha, the children, and Jerry were sharing

an apartment with another adult couple, C.P. (Carol) and J.Z.

(Jay).

 On April 1, 2013, Jerry and Martha went to New York City,

leaving Junior and Margaret in the care of Carol and Jay. At that

1
 To protect privacy interests and for ease of reading, we use
fictitious names for the parties, their children, and the
roommates. See R. 1:38-3(b)(12).

 2 A-1018-15T2
time, Junior was three years old and Margaret was approximately

five weeks old.

 While in New York City, Jerry and Martha were arrested by

agents of the Federal Bureau of Investigation (FBI) and charged

with distribution of narcotics. Both Jerry and Martha were

incarcerated in New York City. They informed the FBI agents that

their children were at their apartment in Jersey City.

Accordingly, an FBI agent contacted the Jersey City Police

Department (JCPD) and requested a welfare check on the children.

 Late in the evening of April 1, 2013, two JCPD officers and

an FBI agent went to the apartment. The officers were greeted by

Jay, who informed them that he and Carol were looking after both

children. After entering the apartment, the officers observed two

pit bulls and noted the smell of animal waste. The officers also

saw that the apartment was extremely cluttered, unkempt, and dirty.

 The officers found both children in the apartment and they

observed that the children appeared to be in good health.

Nevertheless, the officers decided to take the children for

evaluations at the Jersey City Medical Center (JCMC). Subsequent

medical exams revealed that both children were physically healthy,

but Junior was hyperactive and he did not respond to oral

communications.

 3 A-1018-15T2
 The officers also contacted the Division of Child Protection

and Permanency (Division), and a Division worker came to the JCMC.

After learning that the parents were incarcerated, and after the

worker was unable to contact the roommates or any identified

relative, the Division conducted an emergent removal of the

children. Thereafter, the Family Part approved that removal and

granted the Division temporary custody of the children.

 On April 5, 2013, a Division worker met with and interviewed

Jerry. Jerry had been released from jail, but he was under "house

arrest" at his mother's home in New York. Jerry informed the

Division worker that he, Martha, and their children lived in an

apartment with Carol and Jay. He explained that Jay was a close

friend of Martha and he had known him for at least five years.

 Under questioning by the Division worker, Jerry admitted that

he had previously sold drugs "on occasion." He also stated that

he had no criminal record, but he acknowledged that on April 1,

2013, he had been arrested and charged with selling drugs. Jerry

also informed the Division worker that for the past five to six

years, he had used crystal methamphetamine approximately once a

week. He denied, however, that he ever used drugs in the presence

of the children or had drugs in the home.

 The Division worker also interviewed Martha, who was being

held at the Metropolitan Correctional Center in New York. Martha

 4 A-1018-15T2
denied ever selling or using drugs. She also denied ever seeing

Jerry use drugs in her presence. While acknowledging that she

suspected Jerry used drugs, she stated that she never saw Jerry

high on drugs while he was caring for the children.

 Martha also explained that the home was unkempt because they

had moved into the apartment two months before, and she was

recovering from a caesarean section during the delivery of

Margaret. Martha also stated that Carol and Jay had known both

children since the children were born.

 A fact-finding hearing was conducted on August 7, 2013. The

Division presented three witnesses: two caseworkers and a JCPD

police officer who had participated in the welfare check on the

children. The Division also submitted documentary evidence,

including a certified copy of the indictment against Jerry and

Martha and the corresponding federal docket sheet. The indictment

was admitted for the limited purpose of confirming that there were

charges filed against Jerry and Martha. Neither Jerry nor Martha

testified at the hearing and they did not call any witnesses or

submit any documents.

 After considering the evidence, the Family Part concluded

that the Division had proven that both Jerry and Martha had abused

or neglected their children. The judge made separate findings

concerning Jerry and Martha.

 5 A-1018-15T2
 With regard to Jerry, the court relied on his admission of

using and selling drugs and reasoned "that it's more likely than

not . . . that he was [engaging] in the sale of drugs on April [1,

2103]." The court then held that "the Division has met its burden

of proof that on the date he was arrested for selling drugs[,] he

placed his children at risk of harm due to his [] arrest." The

court also found that Martha had abused or neglected the children.

 Following the fact-finding hearing, the court conducted a

series of compliance reviews. Jerry and Martha underwent drug

treatment. Ultimately, in February 2015, the children were

returned to the custody of their parents and the litigation was

terminated in September 2015.

 Jerry now appeals the finding of abuse or neglect. Martha

did not appeal. The Division opposes Jerry's appeal and the Law

Guardian, who represents the children, supports the Division's

position, arguing that there was a preponderance of evidence

establishing that Jerry abused or neglected his children.

 The Division sought to supplement the record with documents

showing the dispositions of the criminal charges against Martha

and Jerry. Jerry opposed that motion and cross-moved to supplement

the record with other information. We denied both motions to

supplement the record.

 6 A-1018-15T2
 II.

 Our standard of review is well settled. We are bound by the

trial court's factual findings if supported by sufficient credible

evidence. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J.

Super. 551, 577-78 (App. Div. 2010). We accord particular

deference to the Family Part's fact-finding because of the court's

special expertise in family matters, its "feel of the case[,]" and

opportunity to assess credibility based on witnesses' demeanor.

N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104

(2008); Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).

 Nevertheless, "our review is less constricted when the 'focus

is not on credibility but alleged error in the trial judge's

evaluation of the underlying facts and the implications to be

drawn therefrom.'" N.J. Div. of Youth & Family Servs. v. S.H.,

439 N.J. Super. 137, 144 (App. Div.) (quoting N.J. Div. of Youth

& Family Servs. v. C.S., 367 N.J. Super. 76, 112 (App. Div.),

certif. denied, 180 N.J. 456, 852 (2004)), certif. denied, 222

N.J. 16 (2015). We also owe no deference to the trial court's

"interpretation of the law and the legal consequences that flow

from established facts." Manalapan Realty, L.P. v. Twp. Comm. of

Manalapan, 140 N.J. 366, 378 (1995).

 N.J.S.A. 9:6-8.21(c)(4), states that an abused or neglected

child includes:

 7 A-1018-15T2
 [A] child whose physical, mental, or emotional
 condition has been impaired or is in imminent
 danger of becoming impaired as the result of
 the failure of his parent . . . to exercise a
 minimum degree of care . . . (b) in providing
 the child with proper supervision or
 guardianship, by unreasonably inflicting or
 allowing to be inflicted harm, or substantial
 risk thereof . . . .

 The Division "must prove that the child is 'abused or

neglected' by a preponderance of the evidence, and only through

the admission of 'competent, material and relevant evidence.'"

N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32

(2011) (quoting N.J.S.A. 9:6-8.46(b)). The statute requires a

court to consider harm or risk of harm to the child, as opposed

to the intent of the abuser, because "[t]he main goal of Title 9

is to protect children." G.S. v. Dep't of Human Servs., 157 N.J.

161, 176 (1999). The phrase "minimum degree of care" means conduct

that is "grossly or wantonly negligent, but not necessarily

intentional." Dep't of Children and Families v. T.B., 207 N.J.

294, 305 (2011). "There exists a continuum between actions that

are grossly negligent and those that are merely negligent. The

parent's conduct must be evaluated in context based on the risks

posed by the situation." Id. at 309.

 A court "need not wait to act until a child is actually

irreparably impaired by parental inattention or neglect." N.J.

Dep't of Children & Families v. A.L., 213 N.J. 1, 23 (2013)

 8 A-1018-15T2
(quoting In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)).

"In the absence of actual harm, a finding of abuse and neglect can

be based on proof of imminent danger and substantial risk of harm."

Ibid. (citing N.J.S.A. 9:6-8.21(c)(4)(b)). "Whether a parent or

guardian has failed to exercise a minimum degree of care is to be

analyzed in light of the dangers and risks associated with the

situation." G.S., supra, 157 N.J. at 181-82.

 Jerry argues that the Family Part committed two errors by (1)

applying an incorrect legal standard in finding abuse or neglect,

and (2) admitting and relying on the indictment and federal docket

sheet, as well as the embedded hearsay in those documents. Jerry

also argues that he cannot be found to have abandoned his children

or to have placed them in an unsafe home because the Family Part

made no such findings.

 Initially, we dispose of the last argument. The Division

concedes that the Family Part did not make any findings that Jerry

abandoned or placed his children in an unsafe environment. Indeed,

the Division acknowledges that the finding of abuse or neglect

against Jerry relates only to his alleged engagement in the

distribution of narcotics.

 We, therefore, focus on whether there was sufficient proof

that Jerry engaged in the distribution of narcotics and whether

that alleged action placed his children in substantial risk of

 9 A-1018-15T2
harm. We reverse because the Division failed to establish by a

preponderance of evidence that Jerry distributed narcotics or that

that alleged activity placed his children at substantial risk of

harm.

 On April 1, 2013, Jerry was arrested and charged with

possession with intent to distribute methamphetamine, a controlled

dangerous substance. On June 24, 2013, Jerry was indicted on one

count of conspiracy to possess and distribute methamphetamine.

Accordingly, at the time of the fact-finding hearing, Jerry had

only been charged with a crime and the Division submitted no proof

that he actually committed the crime.

 The Family Part relied on Jerry's admission that he had

previously sold drugs and that he had previously used crystal

methamphetamine to conclude "that it's more likely than not" that

Jerry engaged in the sale of illegal drugs on April 1, 2013. That

conclusion was not supported by substantial credible evidence in

the record. An indictment is not proof that a crime has been

committed. State v. Orecchio, 16 N.J. 125, 133-35 (1954).

Instead, "[a]n indictment is evidence only of the fact that a

charge has been made; it in no [way] establishes the truth of the

charge or the presence of sufficient legal proof thereof." Id.

at 132.

 10 A-1018-15T2
 Moreover, Jerry's admission to a Division worker that he had

previously sold drugs on other occasions did not constitute

sufficient evidence for the court to draw the conclusion that

Jerry sold drugs on April 1, 2013. In a Title 9 proceeding, a

parent or guardian's past criminal acts can be relevant and

admissible, but only to determine the risk of harm to the children.

N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551,

573. Indeed, N.J.R.E. 404(b) prohibits a fact finder from using

evidence of prior criminal acts to find that a person had acted

in conformity with the disposition to commit a criminal act. See

Id. at 571 (App. Div. 2010) ("[T]he rule is one of 'exclusion'

rather than 'inclusion' and should be used to exclude evidence of

other crimes, civil wrongs, or acts when such evidence is 'offered

solely to establish the forbidden inference of propensity or

predisposition.'" (quoting State v. Nance, 148 N.J 376, 386

(1997))).

 We find no fault with the admission into evidence of the

indictment or the federal docket sheet. N.J.S.A. 9:6-8.46(a)(3)

allows admission into evidence "of any condition, act,

transaction, occurrence or event relating to a child in an abuse

or neglect proceeding . . . [as] proof of that condition, act,

transaction, occurrence or event" if it meets the prerequisites

for admission as a business record. The indictment and the docket

 11 A-1018-15T2
sheet, however, merely established that Jerry had been charged

with a crime. In this case, they did not establish proof that a

crime had been committed.

 The Division also failed to prove by a preponderance of

evidence that the children were placed at substantial risk of

harm. Even if Jerry had distributed narcotics or conspired to

distribute narcotics, that action, on its own, did not present a

substantial risk of harm to the children. The children were not

present at the time that Jerry allegedly distributed the

methamphetamine. Indeed, Jerry was in New York City and the

children were in the care of Jerry's adult roommates in New Jersey.

 Further, despite Jerry's admission to past drug use, he also

stated that he had never used drugs in front of the children or

had drugs in the home. As we have previously held, "not all

instances of drug ingestion by a parent will serve to substantiate

a finding of abuse or neglect." N.J. Div. of Youth & Family Servs.

v. V.T., 423 N.J. Super. 320, 332 (App. Div. 2011). The Division

must demonstrate that the children were at substantial risk of

harm. N.J.S.A. 9:6-8.21(c)(4)(b). Here, there was no showing

that the children were at risk, much less a substantial risk.

 The Division argues that the children were at risk because

Jerry's actions could result in his arrest. Thus, according to

the Division, Jerry ran the risk of not being available to care

 12 A-1018-15T2
for his children if he was incarcerated. The problem with that

argument is that the Division presented no evidence to support

that contention. Here, it was undisputed that the children were

in the care of Jerry's adult roommates when Jerry was arrested and

incarcerated. The Division further concedes that it did not

present evidence to show that Jerry abandoned the children or that

the children were left with improper caregivers.

 In short, the Division failed to establish by a preponderance

of evidence that Jerry abused or neglected his children. There

was no competent evidence to establish that Jerry had distributed

narcotics or conspired to distribute narcotics. Just as

importantly, there was no nexus between the alleged act of

distribution and a showing of substantial risk of harm to the

children. Accordingly, any designation that Jerry abused or

neglected his children because of his arrest and incarceration in

April 2013 must be vacated.

 Reversed.

 13 A-1018-15T2