**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5586-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

E.W.,

    Defendant-Appellant,

and

R.A.,

    Defendant.

_____

IN THE MATTER OF B.W.,

    a Minor.

_____

        Submitted October 3, 2017 — Decided October 30, 2017

        Before Judges Yannotti and Mawla.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Hudson County,
        Docket No. FN-09-0174-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Alaina M. Antonucci, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Karen Ann Lodeserto, Designated Counsel, on the brief).

PER CURIAM

Defendant E.W. appeals from a March 15, 2016 order entered by the Family Part following a fact-finding hearing concluding she committed abuse or neglect of her daughter B.W. (Barbara).[1]  We affirm.

E.W. has a long history of using PCP.  She is the biological mother of six children, five of whom tested positive for PCP at birth.  Barbara was born September 15, 2015, with PCP in her system.  As a result, on September 22, 2015, the Division of Child Protection and Permanency (Division) filed a Verified Complaint for care, custody, and supervision of Barbara.

By way of background, when the Division filed its complaint, none of E.W.'s children were in her care.  In 2008, the trial court granted kinship legal guardianship of two children to a

---

[1] We use a pseudonym to protect the child's privacy.

relative caretaker. In 2012, E.W.'s parental rights to two other children were terminated, and in 2015, her parental rights to a third child were terminated. At the time of the March 15, 2016 fact-finding hearing in this matter, the Division had custody of Barbara as well.

The only witness to testify at the hearing was Division caseworker Elizabeth Rosa, who explained the Division's long history of providing drug treatment services to E.W. Between 2009 and 2015, the Division provided E.W. with 150 referrals for substance abuse assessments. E.W. attended about fifteen of these assessments and tested positive for PCP with every random drug screen. E.W. was admitted to three substance abuse programs between 2009 and 2015, and was discharged from all of them for aggression and non-compliance. E.W. also failed to comply with the Division's referrals to receive mental health treatment.

Rosa testified that between 2009 and 2015, E.W. was offered supervised visitation with her children. She explained E.W. displayed aggression and irritability during visits. Division records demonstrated she was inattentive to the children and attended visitation under the influence.

According to Rosa's testimony, on September 16, 2015, the Division received its referral in this matter from Jersey City Medical Center, citing concerns for Barbara and noting E.W. had

tested positive for PCP at the time of Barbara's birth. A Division caseworker responded to the hospital and interviewed E.W. who claimed "I don't smoke PCP, but I was around people that do."

Rosa explained that even though Barbara did not experience withdrawal symptoms, the hospital's records indicate her urine tested positive for PCP between September 15 and 18, 2015. The Division substantiated E.W. for abuse and neglect because of Barbara's positive drug test, E.W.'s ongoing PCP use, and failure to complete substance abuse treatment.

On September 18, 2015, the Division executed an emergency removal of Barbara. After Barbara's birth, E.W.'s non-compliance with substance abuse treatment and visitation continued, and she continued to test positive for PCP.

On March 15, 2016, the trial court held a fact-finding hearing and found E.W. failed to remediate her "significant substance abuse issues" prior to her daughter's birth, causing her to test positive for PCP at birth, and placing her at substantial risk of harm. The court explained although it was not neglect for Barbara to test positive for PCP, "other facts . . . in addition to her having been born positive for PCP, are very relevant and . . . because of the extreme nature and extent of the facts testified to, do constitute a substantial risk of serious harm to [Barbara]."

Finding the Division had met its burden of showing a substantial risk of harm by a preponderance of the evidence, the trial court held:

> This is a situation where the totality of the circumstances is clear to this Court that little [Barbara], who's now only six years [sic] old, but was born positive for PCP, although the child didn't suffer withdrawal, having five older siblings removed from [mother]'s care and terminated by the Court after trials because of largely [E.W.]'s terrible disease of substance abuse and her refusal to even take the first step, which is to acknowledge that she has the disease and it has to be treated, her inability to care for any of her children and her consistent refusal to substantially cooperate with services offered by the Division, make it clear that [Barbara], from the time of birth, was certainly at substantial risk of serious harm.
>
> [E.W.] was not capable of providing a minimum degree of care to [Barbara]. I don't think any parent in their right mind would permit [E.W.] to watch a baby for two minutes in the shape she's in, actively suffering from this disease and having been unable to care for any of her children, as shown by clear and convincing evidence.
>
> Now, we see nothing's changed. . . . I think that it's certainly been proven by the Division by a preponderance of the evidence that [Barbara] was and still is at imminent risk of substantial harm were she placed in [E.W.]'s care.

The trial court entered an order memorializing the abuse and neglect finding and continuing the Division's custody of Barbara. E.W. now challenges the order.

We begin with our standard of review. "[B]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Moreover, appellate courts 'defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record.'" M.C. III, supra, 201 N.J. at 342-43 (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

"Although we defer to the trial court's findings of fact, especially when credibility determinations are involved, we do not defer on questions of law." N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011) (citing N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88-89 (App. Div. 2006)). However, "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Pascale v. Pascale, 113 N.J.

6

20, 33 (1988) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms, supra, 65 N.J. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div.), certif. denied, 40 N.J. 221 (1963)).

Citing N.J. Div. of Child Prot. & Perm. v. A.L., 213 N.J. 1, 22 (2013), E.W. argues that "[t]he statute does not cover a past risk of harm during pregnancy, which did not materialize. The Division bears the burden of proof at a fact-finding hearing and must prove present or future harm to a child by a preponderance of the evidence." She asserts we have rejected a categorical approach equating substance abuse with child abuse or neglect. See V.T., supra, 423 N.J. Super at 331.

Moreover, E.W. argues the Division failed to establish imminent risk to Barbara because her conduct did not fall below the minimum degree of care required in G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999), whereby "[t]he phrase 'minimum degree of care' denotes . . . something more than ordinary negligence" and "refers to conduct that is grossly or wantonly

negligent, but not necessarily intentional." She contends because Barbara did not suffer withdrawal symptoms though she tested positive for PCP at birth, and because she was "never given the opportunity to care for [Barbara]," the court erred in finding the Division met its burden.

E.W. also argues the Division failed to establish that she acted with gross negligence or recklessness to succeed in a prosecution under N.J.S.A. 9:6-8.21(c)(4)(b). Citing N.J. Div. of Child Prot. & Perm. v. Y.N., 220 N.J. 165 (2014), rev'd, 222 N.J. 308 (2015), E.W. asserts the Division did not prove she failed to exercise a minimum degree of care "in light of the dangers and risks associated with the situation." Y.N., supra, 220 N.J. at 181, 184 (quoting G.S., supra, 157 N.J. at 181-82). E.W. contends because Barbara was removed from her care immediately after the child tested positive for PCP at birth, she was never given the opportunity to care for daughter, and therefore the Division could not assess the harm to Barbara "to protect [her] from a wide range of conduct that clearly qualifies as neglect." G.S., supra, 157 N.J. at 181.

E.W. further argues because the trial court found Barbara did not suffer from E.W.'s use of PCP, and "relied primarily on [E.W.]'s past history in determining future harm," the Division could not sustain its burden of proving abuse or neglect by a

preponderance of the evidence. We address these arguments in turn.

The purpose of a fact-finding hearing is "to determine whether the child is [] abused or neglected." N.J.S.A. 9:6-8.44. An "[a]bused or neglected child" includes a minor child:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21(c)(4).]

"Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of DMH, 161 N.J. 365, 383 (1999) (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 616 (1986)). Though a past risk of harm is not proscribed by the statute, "a guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." G.S., supra, 157 N.J. at 181.

"Whether the parent has exercised the requisite degree of care is to be analyzed in light of the dangers and risks associated with the particular situation at issue." N.J. Dep't of Youth & Family Servs. v. J.L., 410 N.J. Super. 159, 168 (2009) (citing G.S., supra, 157 N.J. at 181-82). "The inquiry must focus on the harm to the child and 'whether that harm could have been prevented had the guardian performed some act to remedy the situation or remove the danger.'" Ibid. (quoting G.S., supra, 157 N.J. at 182). "[T]he fact-sensitive nature of abuse and neglect cases turns on particularized evidence." A.L., supra, 213 N.J. at 28 (citation omitted).

In making a finding of abuse or neglect, a court considers "the totality of the circumstances, since '[i]n child abuse and neglect cases the elements of proof are synergistically related. Each proven act of neglect has some effect on the [child]. One act may be "substantial" or the sum of many acts may be "substantial."'" V.T., supra, 423 N.J. Super. at 329-30 (quoting N.J. Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010), certif. denied, 207 N.J. 188 (2011)). Pursuant to N.J.S.A. 9:6-8.46(b), "[u]nder the preponderance standard, 'a litigant must establish that a desired inference is more probable than not.'" Liberty Mut. Ins. Co. v. Land, 186 N.J.

163, 169 (2006) (quoting Biunno, Current N.J. Rules of Evidence, comment 5a on N.J.R.E. 101(b)(1) (2005)).

In A.L., supra, 213 N.J. at 127, a mother and her child both tested positive for cocaine at the child's birth, based on the mother's allegedly accidental ingestion of cocaine.  The Supreme Court reversed a finding of abuse or neglect, holding "a report noting the presence of cocaine metabolites in meconium, without more, does not establish proof of imminent danger or substantial risk of harm."  Id. at 27-28.  The Court expounded "evidence of actual impairment to the child will satisfy the statute, but in a case where there is no such proof, the critical focus is on evidence of imminent danger or substantial risk of harm."  Id. at 22.

Furthermore, whether the Division has met its burden of proof for an abuse and neglect complaint when a child tests positive for illicit substances at birth depends on the Division's proofs.  Id. at 29.  These proofs must "reveal the severity or extent of the mother's substance abuse or, most important in light of the statute, the degree of future harm posed to the child."  Id. at 27.  "Proof that a child's mother frequently used . . . dangerous substances during pregnancy would be relevant to [the] issue" of abuse and neglect.  Id. at 23.

In V.T., supra, 423 N.J. Super. at 324-25, a father tested positive for cocaine and marijuana during supervised visits with his ten-year-old son, but the father "behaved appropriately" at the visits. We reversed a finding of neglect, holding the Division was "unable to demonstrate whether or not [the father] was impaired to the point of posing a risk to [his son] in a supervised setting." Id. at 331. We noted the father "behaved appropriately" during visitation, and the son "unlike an infant" was "not vulnerable during these visits to the slightest parental misstep." Ibid.

E.W.'s circumstances are different from the circumstances we addressed in V.T. E.W. has an extensive history of PCP use and non-compliance with substance abuse services and mental health treatment services. E.W. tested positive for PCP in August 2015 before Barbara's birth, at the time of Barbara's birth, and after Barbara was placed in the Division's custody.

Also, unlike A.L., the record here suggests E.W.'s PCP use was deliberate. Her extensive history of non-compliance with the Division demonstrates E.W.'s unwillingness to address her substance abuse. Indeed, E.W. attended approximately fifteen out of 150 substance abuse assessments offered by the Division. She failed to complete substance abuse programs between 2009 and 2015. She continuously tested positive for PCP when the Division administered drug screens. Five of her six children have tested

12                                                    A-5586-15T4

positive for PCP at birth and were removed from her custody over a period of seven years, yet E.W.'s drug use continued.

Unlike the parent in V.T., E.W. was incapable of acting as a custodian for her daughter. She lacked stable housing and had made no provisions for Barbara after her birth. Also, the father in V.T. behaved appropriately during supervised visits. V.T., supra, 432 N.J. Super. at 325. In this case, however, E.W. was aggressive, irritable, inattentive to her children, and attended her visits under the influence, demonstrating a risk of harm to Barbara.

In V.T., we stated the age of the child was also a relevant factor. There, we noted the child was ten-years-old, whereas an infant could be vulnerable "to the slightest parental misstep." See id. at 331. Here, Barbara is an infant and therefore would be vulnerable, especially where the trial court noted E.W.'s inability to care for her children, including Barbara, in her current state of addiction. In fact, the trial court found Barbara was at a substantial risk of future harm because of E.W.'s "terrible disease of substance abuse and her refusal to . . . be treated, her inability to care for any of her children and her consistent refusal to substantially cooperate with services offered by the Division," and her inability to maintain sobriety.

13                                                          A-5586-15T4

The trial court's findings considered the totality of the circumstances. We are satisfied the adequate, substantial, and credible evidence in the record supports the court's conclusion E.W. placed Barbara at a substantial risk of harm constituting abuse or neglect within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5586-15T4