**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1560-16T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

B.R.,

    Defendant-Appellant,

and

M.H.,

    Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF G.H. and
W.H., minors.

_____

        Submitted September 26, 2017 — Decided October 4, 2017

        Before Judges Fasciale and Sumners.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Atlantic
        County, Docket No. FG-01-0047-16.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Marc D. Pereira, Designated
        Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Alexa L. Makris, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Toya Davis, Designated Counsel, on the brief).

PER CURIAM

B.R. (the mother) appeals from a November 30, 2016 order terminating her parental rights to her children G.H., born in February 2014, and W.H., born in September 2015. Judge Jeffrey J. Waldman entered the order and rendered a lengthy written opinion. We reject the mother's contentions that the Division of Child Protection and Permanency (Division) failed to meet its statutory burden under each prong of the best interests test, codified at N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence.

In reviewing a decision by a trial court to terminate parental rights, we give "deference to family court[s'] fact[-]finding" because of "the family courts' special jurisdiction and expertise in family matters[.]" Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge's findings of fact are not disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort,

Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006), certif. denied, 190 N.J. 257 (2007).

Here, the judge carefully reviewed the evidence presented, and thereafter concluded that the Division had met, by clear and convincing evidence, all of the legal requirements for a judgment of guardianship. His opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of DMH, 161 N.J. 365 (1999), and New Jersey Division of Youth & Family Services v. F.M., 211 N.J. 420 (2012), and is supported by substantial and credible evidence in the record. We therefore affirm substantially for the reasons that the judge expressed in his comprehensive and well-reasoned opinion. We add the following remarks as to each prong.

As to prong one, the Division must prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "[T]he relevant inquiry focuses on the cumulative effect, over time, of harms arising from the home life provided

by the parent." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 289 (2007).

"Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (citing In re Guardianship of J.C., 129 N.J. 1, 18 (1992)). As a result, "courts must consider the potential psychological damage that may result from reunification[,] as the 'potential return of a child to a parent may be so injurious that it would bar such an alternative.'" N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 480-81 (App. Div. 2012) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 605 (1986)).

"The absence of physical abuse or neglect is not conclusive." A.W., supra, 103 N.J. at 605 (quoting In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977)). "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." DMH, supra, 161 N.J. at 379. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." Id. at 383.

The Division introduced evidence to support its contention that the mother's elongated substance abuse harmed G.H. and W.H. The court found

> [the mother] admitted to using drugs as early as [eleven]-years-old. The first drug that she start[ed] using was marijuana. [The mother] testified that in July 2012[,] she was smoking marijuana and doing [ten] bags of heroin a day, while pregnant with a child she did not end up having. [The mother] testified that in November 2013, while pregnant with G.H., she was using [fifty] bags of heroin a day and doing any other drug she "could get her hands on." When G.H. was born, he tested positive for methadone and had to spend almost a month in the hospital.
>
> . . . .
>
> At the time of her psychological evaluation with [the Division's psychological expert,] Dr. Cahill, [the mother] stated that she was clean for [thirteen] months. However, [the mother] was not regularly calling in for random urine screens in the months prior to the evaluation. [The mother] also had two positive drug screens in August 2016[,] which she claimed were from dental surgery. [The mother] testified that she has been attending both narcotics anonymous and alcohol[ics] anonymous meetings. Although she started attending these programs in November 2015, [the mother] has only progressed to step [two] in the [twelve] step program. After struggling for almost [sixteen] years with her addiction, [the mother] is still enrolled in a Level II: intensive outpatient program.

The mother argues that substance abuse is not prima facie evidence of neglect or abuse under N.J.S.A. 30:4C-15.1(a), and

relies on <u>New Jersey Division of Youth & Family Services v. V.T.</u>, 423 <u>N.J. Super.</u> 320, 331 (App. Div. 2011) for that proposition. However, that case is factually distinguishable. The mother has exhibited a far more substantial and prolonged battle with substance abuse than the defendant in that case.

The police found the mother almost unconscious and under the influence of heroin in the driver's seat of her car, while G.H. was in the back seat. Although G.H. was unharmed when the police arrived, the mother placed G.H. in a tenuous position by being unable to help G.H., if needed.

Thus, there exists substantial credible evidence to support the judge's findings that the mother's extensive substance abuse issues harmed and endangered the children and "threatens the child[ren]'s health and will likely have continuing deleterious effects . . . ." <u>K.H.O.</u>, <u>supra</u>, 161 <u>N.J.</u> at 352.

As to prong two, the Division must prove that the mother is "unwilling or unable to eliminate the harm facing the child[ren] or is unable or unwilling to provide a safe and stable home . . . and the delay of permanent placement will add to the harm." <u>N.J.S.A.</u> 30:4C-15.1(a)(2). That harm may include evidence that separating the children from their resource parents "would cause serious and enduring emotional or psychological harm . . . ."

The Division can establish the second prong by proving that a "child will suffer substantially from a lack of stability and a permanent placement[,] and from the disruption of" a bond with the resource parents. K.H.O., supra, 161 N.J. at 363. Because they are related, evidence supporting the first prong may also support the second prong "as part of the comprehensive basis for determining the best interests of the child." DMH, supra, 161 N.J. at 379.

Here, the judge found that the mother failed to maintain stable housing for the length of the Division's involvement. The judge found further that

> [the mother] has been in jail numerous times, various inpatient programs, her mother's house (which stays have been tenuous) and Oxford House, where children are not allowed. [The mother] has been kicked out of her mother['s] house numerous times, even as recently as September 2016. . . .
>
> . . . .
>
> On September 23, 2016, the Division filed an unusual incident report in regard to the state in which [the mother] returned G.H. and W.H. after a visit. Concerns were expressed that W.H. was wet with sweat on his head and shirt, that he did not get enough sleep, and that he had not eaten any formula during the visit. Concerns were also expressed about G.H. in that his diaper had not been changed for so long he had dried stool on his bottom and his face was very dirty.

The mother contends that at the time of trial on November 9 and 10, 2016, she was working and living with her parents. She states that her progression since graduating from the Straight and Narrow Program, and successfully transitioning off methadone treatment, evidences adequate stability to care for G.H. and W.H.

As recent as September 2016, however, the mother visited the children inconsistently, and became difficult for the Division to contact. The evidence shows that the mother has not been the primary caregiver to either G.H. or W.H. on any consistent basis. The judge also stated "[the mother]'s parenting skills have not been tested in the community, with the stressors of day-to-day life."

Therefore, there is substantial credible evidence supporting the judge's findings that the mother is unwilling or unable to eliminate the harm facing the children, or is unable or unwilling to provide a safe home for the children.

As to prong three, the Division is required to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,] and the court [will] consider[] alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3). This third "prong of the [best interests of the child] standard contemplates efforts that focus on reunification of the parent

with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., supra, 161 N.J. at 354.

The judge found that the Division provided reasonable efforts to correct the circumstances that led to the children's placement. The judge found further that

> [the mother] has been referred for numerous substance abuse evaluations. The Division has provided referrals to Brenna Cash at Sandy Shore for individual counseling and anger management classes, Jewish Family Services for assistance with housing and finding additional services, and Robins' Nest creative visitation. The Division has also provided a number of family team meetings, random urine screens, hair follicle testing, and visitation services throughout the length of Division involvement.
>
> On September 13, 2016, the court ordered [the mother] have unsupervised visitation with G.H. and W.H. for one hour per week. At the time, [the mother] was attending the Family Life Center (FLC) for visitation and parenting education. When her services through FLC [were] completed[,] [the mother] was required to call the [D]ivision and confirm visits. After this change in the visitation schedule, weeks went by in which [the mother] did not visit with the children and did not contact the Division.

As to considering alternatives to termination of parental rights, the judge found

> [t]he Division attempted to assess a placement for G.H. and W.H. with their maternal grandparents, L.R. and R.R., but was

A-1560-16T2

unsuccessful due to the unwillingness of the maternal grandparents to take care of additional children. The Division also discussed kinship legal guardianship (KLG) with [N].H. and J.L., the children's current placement and paternal grandparents. [But] [N].H. and J.L. indicated that they are not interested in KLG and wish to pursue adoption and provide permanency for G.H. and W.H.

There exists substantial credible evidence to support the judge's findings that the Division made reasonable efforts to provide services to help the mother correct the circumstances which led to the children's placement outside the home; and the court considered alternatives to termination of parental rights, such as KLG.

As to prong four, there exists sufficient credible evidence to show that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). Relying on the expert testimony, the court found that

there is not a strong attachment between [the mother] and her children and that the minor children see N.H. as their primary caretaker. Dr. Cahill testified that G.H. and W.H. see N.H. and [J.L.], as their psychological parents.

The [c]ourt finds that the termination of parental rights of [the mother] as to the minors, G.H. and W.H., would not do more harm than good. N.H. and [J.L.] are willing to adopt G.H. and W.H., and they have been thriving in their care. Dr. Cahill opined that there is a strong attachment between N.H. and [J.L.] and the children, G.H. and W.H.

10

It would not do more harm than good to terminate the rights of [the mother] to the children, as the plan of adoption by N.H. and [J.L.] will enable G.H. and W.H. to enjoy a permanent and nurturing lifestyle. The speculation of a potential life for G.H. and W.H. with [the mother] holds with it an unreasonable hope that she will be able to completely change her current lifestyle. [The mother] has no significant employment, no articulable plan for how she is going to obtain assistance in paying for the cost of two children, and no stable housing. The children have formed bonds with their caretakers, and delaying permanency for any longer will cause harm to them.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION