**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0583-15T2
        A-0584-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

J.J. and A.C.,

    Defendants-Appellants.
_____

IN THE MATTER OF J.J.
and N.J., minors.
_____

    Argued October 11, 2017 — Decided November 17, 2017

    Before Judges Gilson and Mayer.

    On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0215-14.

    David A. Gies, Designated Counsel, argued the cause for appellant J.J. (Joseph E. Krakora, Public Defender, attorney; Mr. Gies, on the brief).

    Susan M. Markenstein, Designated Counsel, argued the cause for appellant A.C. (Joseph E. Krakora, Public Defender, attorney; Ms. Markenstein, on the brief).

Julie B. Colonna, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Colonna, on the brief).

Lisa M. Black, Designated Counsel, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Ms. Black, on the brief).

PER CURIAM

A mother and father appeal from an August 12, 2014 order finding that they abused or neglected their two young children by exposing them to a substantial risk of harm resulting from the ongoing domestic violence between the parents, the father's substance abuse, and the parents' violations of a child safety protection plan and court order. We affirm because the findings of abuse or neglect were supported by substantial credible evidence.

I.

A.C. (Alice),[1] the mother, and J.J. (James), the father, are the parents of two children: J.J., Jr. (Jake), born in September 2010, and N.J. (Nora), born in September 2011. The family has an extensive history with the Division of Child Protection and Permanency (Division). The abuse or neglect findings in this case

---

[1] To protect privacy interests and for ease of reading, we use initials and fictitious names for the parents and child. See R. 1:38-3(d)(12).

focused on the two young children, who were three and two years old in 2014 when the abuse or neglect occurred.

In January 2014, the Division received a referral regarding a domestic dispute between Alice and James. Each of the parents had consumed a forty-ounce container of beer and, thereafter, they got into an argument, which turned physical. During that altercation, Alice bit James on both his arms. As a result, Alice was arrested.

An ensuing investigation revealed that the parents had a history of domestic violence. At the time of the incident in January 2014, James was on probation for an aggravated assault of Alice and he admitted that he had assaulted her on another occasion. Certified police records revealed ten investigations of the parents, most of which involved domestic violence. The children were reportedly present during some of those domestic violence incidents. Those police reports also revealed that Alice reported that James repeatedly hit her and punched her in the face. In January 2014, Alice told a Division worker that she understood that her children could be harmed by growing up in a home with domestic violence.

During its investigation, the Division also learned that James had a history of crack cocaine abuse. Alice acknowledged that she was aware of James's substance abuse. Nevertheless, she

informed the Division that she left James as the sole caretaker of the children when she went to work.

In February 2014, James tested positive for cocaine and ultimately admitted to using cocaine. Thereafter, the Division implemented a safety protection plan under which James's contact with the children was to be supervised by his grandmother. Both Alice and James signed the safety plan.

After the safety plan was put in place, the Family court entered an order enforcing the plan. The court order also prohibited James and Alice from being in the same place at the same time with the children, and provided that James could not be in Alice's home with the children except when Alice is not present and James's grandmother was present.

Alice and James were found to be in violation of the safety plan and court order twice. On February 27, 2014, the owner and manager of a bar below Alice's apartment reported that he found James in the apartment with Alice and the children. A responding police officer reported that there was only one bed in the apartment, and the officer believed that the parents had been sleeping in the same bed with the children.

Alice and James violated the safety plan and order again on March 6, 2014. Alice admitted that James had been in her home where the children reside without supervision by his grandmother.

Simultaneous with these incidents, James reported to the Division that he was in full relapse, had been discharged from his treatment program, and could not control his substance abuse. James was, thereafter, admitted into an inpatient treatment program for several weeks. While in treatment, James was diagnosed with cocaine and alcohol dependency, depressive disorder, and hypertension. James's attending physician from the program testified that James had a high probability of relapsing because he lacked coping skills and he was in a poor environment for recovery.

In May 2014, after James completed the inpatient program, a police officer responded to a report of a man wandering in the middle of an intersection. The officer identified the man as James and testified that he appeared to be highly intoxicated and could not explain why or what he was doing in the middle of the street.

In response to the parents' violations of the safety plan and court order, and James's continued substance abuse, in late March 2014, the Division removed the children from their parents' care and applied for custody of the children. The court granted that application after finding that the parents had violated the safety plan and order. The court also directed both parents to attend substance abuse evaluations and domestic violence counseling.

A-0583-15T2

A fact-finding hearing was conducted on June 10, 2014. The Division presented testimony from six witnesses and entered a number of documents into evidence. Neither Alice nor James testified at the hearing, and they did not present any witnesses on their own behalf. Following the hearing, the Family judge issued an order and written decision on August 12, 2014, finding that the Division had proven by a preponderance of the evidence that both parents had abused or neglected the two children.

The judge found the witnesses who testified on behalf of the Division to be credible. Relying on the testimony of the witnesses and the facts established in the documents submitted into evidence, the judge found that the parents had a history of "severe domestic violence, including a number of physical assaults causing injury." The judge also found that the children were present during some of the domestic violence incidents.

In addition, the Family judge found that James had a significant and ongoing substance abuse problem. The court also found that Alice was aware of James's substance abuse problems, but left him as the primary caregiver of their two young children on a regular basis. The judge then found that James's role as primary caretaker, while he was suffering from ongoing substance abuse problems, created a substantial risk of harm to the young children.

A-0583-15T2

Turning to the issue of whether the children were exposed to a risk of harm, the judge found that the extensive domestic violence between the parents, James's substance abuse, and the violations of the safety plan and court order placed the children at a substantial risk of harm. In that regard, the trial court found that both parents knowingly and willfully violated the safety plan and court order.

After finding that the parents abused or neglected their children, the court held several compliance hearings. In July 2015, the court entered an order approving the Division's permanency plan of termination of parental rights. Accordingly, the Title 9 action was terminated, and the Division filed a Title 30 action for guardianship and termination of parental rights. At oral argument, counsel informed us that, thereafter, the Division returned custody of the two children to Alice.

## II.

Both parents now appeal from the order finding that they abused or neglected their two children. The appeals were consolidated. Alice argues that she did not abuse or neglect her children and she contends that James's substance abuse did not support a finding of abuse or neglect. Alice also argues that there was insufficient evidence for the court to find that the

domestic violence between the parties placed the children in imminent danger or created a substantial risk of harm.

James presents two arguments for our consideration. First, he contends that the court erred when it found that the burden of persuasion shifted to the parents to show that they did not abuse or neglect the children. Second, he argues that the trial court erred when it found that the children were in imminent danger of harm due to his substance abuse when there was no expert testimony supporting such a conclusion. Having reviewed these arguments in light of the record, we affirm the August 12, 2014 order finding that both parents abused or neglected their two young children.

The scope of our review in an appeal from an order finding abuse or neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014). We will uphold the trial judge's factual findings and credibility determinations if they are supported by adequate, substantial, and credible evidence. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). Accordingly, we will only overturn the judge's findings if they "went so wide of the mark that the judge was clearly mistaken." Ibid.

We do not, however, give "special deference" to the trial court's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202

N.J. 145, 183 (2010)). Consequently, we apply a de novo standard of review to legal issues. D.W., supra, 212 N.J. at 245-46.

The adjudication of abuse or neglect is governed by Title 9, which is designed to protect children. N.J.S.A. 9:6-8.21 to -8.73; N.J.S.A. 9:6-8.8. Under Title 9, a child is abused or neglected if:

> [a] parent or guardian . . . creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ . . . or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]
>
> [N.J.S.A. 9:6-8.21(c)(2) and (c)(4)(b).]

The statute does not require that the child experience actual harm. N.J.S.A. 9:6-8.21(c)(4)(b). A child is abused or neglected if his or her physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired. N.J.S.A. 9:6-8.21(c)(4)(b). In cases where there is an absence of actual harm, but there exists a substantial risk of harm or imminent danger, the court must consider whether the parent exercised a

minimum degree of care under the circumstances.  G.S. v. Dep't of Human Servs., 157 N.J. 161, 171 (1999).

In G.S., the New Jersey Supreme Court explained that failure to exercise a "minimum degree of care" refers to "conduct that is grossly or wantonly negligent, but not necessarily intentional." Id. at 178.  "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." Ibid.  A parent fails to exercise a minimum degree of care if, despite being "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child."  Id. at 181.

The Division must prove by a preponderance of competent, material, and relevant evidence that a child is abused or neglected.  N.J.S.A. 9:6-8.46(b).  This burden of proof requires the Division to demonstrate a probability of present or future harm.  N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 24 (App. Div. 2004), certif. denied, 182 N.J. 426 (2005). Title 9 cases are fact-sensitive, and the court should base its findings on the totality of circumstances.  N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

The issues raised by Alice and James on appeal can be distilled into two arguments.  First, they both allege that there was not enough evidence to support a finding of abuse or neglect.

In particular, Alice and James contend that James's substance abuse did not pose a risk of harm to the children. They also argue that there was no evidence to support the trial court's finding that their ongoing domestic violence exposed the children to a substantial risk or imminent danger.

Second, James challenges the trial court's application of a burden-shifting analysis to find abuse or neglect. He argues that the trial court erred as a matter of law when it shifted the burden of persuasion to him and Alice to rebut the presumption of abuse or neglect.

We are not persuaded by either of these arguments. We will analyze them in turn.

A. The Substantial Evidence

Alice and James argue that the trial court erred in finding that there was sufficient evidence to show that their ongoing domestic violence, James's substance abuse, and their violations of the safety plan and order actually exposed their children to a substantial risk of harm or imminent danger.

The trial court found that there was a lengthy history of domestic violence between James and Alice. The court also found that the children were present during some of those domestic violence incidents. Finally, the court found that both parents were aware that exposing their children to domestic violence

11

created a substantial risk of harm to the children. Alice acknowledged that potential harm to the Division in January 2014. Alice and James also both signed the safety plan, which demonstrates that they were aware that there was a risk to the children. All of those findings are supported by substantial credible evidence in the record.

The trial court also found that James had a substantial and ongoing substance abuse problem. Alice acknowledged that James had that problem. The court then found that despite both parents' knowledge of the potential for harm, James was often left as the primary caregiver to the children. Here again, the court relied on the safety plan and court order. The safety plan and order do not in and of themselves establish the harm to the children. Instead, they establish that the parents were aware that leaving James with the children posed a substantial risk of harm. Again, all of those findings by the court were supported by substantial credible evidence.

B.  The Burden Shifting

As already noted, James contends that the trial court erred by shifting the burden of persuasion to the parents to rebut a presumption of abuse or neglect. We reject this argument for two reasons. First, we do not read the trial court's decision as shifting the burden of persuasion to the parents. Instead, as

12

already analyzed, the trial court found that the Division had established by a preponderance of the evidence that the children were exposed to a substantial risk of imminent harm due to the parents' ongoing domestic violence, James's substance abuse, and their violation of the safety plan and order. Those findings were made without shifting any burden.

Second, while the court made reference to shifting the burden, read in context, it is clear that the court was discussing the parents' decision not to present any evidence at the fact-finding hearing. At oral argument before us, all counsel agreed that the burden should not shift in this case. We agree with that conclusion. Thus, while the trial court's discussion of burden shifting may arguably have created some confusion, the trial court's decision was based on findings supported by substantial credible evidence presented by the Division.

The trial court's decision was also supported by well-established law. In that regard, our Supreme Court has held: "A parent fails to exercise a minimum degree of care if he [or she] is aware of the danger inherent in a situation and fails to adequately supervise the child or recklessly creates a risk of serious injury to that child." G.S., supra, 157 N.J. at 181. See also Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306-07 (2011) ("Indeed, where a parent or

guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger.").

Here, as we have noted, the children faced two dangers: (1) exposure to ongoing domestic violence between their parents, and (2) being left in the care of James who had a substance abuse problem with substantial risk of relapse. The record supports the trial court's finding that both parents were aware that James needed supervision when he was with the children. Both parents were also aware that allowing James to care for the children without supervision exposed the children to a substantial risk of harm. Accordingly, the burden of persuasion did not shift to the parents. Instead, both parents recognized the domestic violence and substance abuse problems, and their knowledge of the risk of harm posed to the children was reflected in the safety plan, as well as the court order. Thereafter, despite knowing of the risks, the parents allowed James to be present with the children unsupervised.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0583-15T2