# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2491-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.W.,

     Defendant-Appellant.

_____

IN THE MATTER OF E.H.,

     a Minor.

_____

Submitted December 17, 2019 – Decided January 22, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FN-21-0153-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Laura M. Kalik, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

A mother appeals from an order finding that she abused or neglected her infant daughter by using illicit drugs while and after she was pregnant with the child. At birth, the child had amphetamines and methadone in her urine, and she was diagnosed with mild neonatal abstinence syndrome (NAS). We affirm.

I.

A.W. (Allison) is the biological mother of three children: J.B. (Jon), born in February 2007; S.W. (Sam), born in June 2014; and E.H. (Ella), born in December 2017.[1] Jon and Sam are in the custody of their great-grandmother and only Ella is the subject of this appeal.

Allison has a long history of drug abuse. In the past, she has admitted to using heroin, crystal methamphetamine, and marijuana. In 2014, when Sam was born, he had drugs in his system and suffered from withdrawal symptoms. Since

---

[1] We use initials and fictitious names to protect privacy interests and the confidentiality of the record. R. 1:38-3(d)(12).

2013, Allison has started, but failed to successfully complete numerous substance abuse treatment programs. She also admitted to various relapses and use of drugs between 2014 and 2017.

While pregnant with Ella in 2017, Allison started a methadone treatment program. In August 2017, four months before the birth of Ella, Allison was discharged from that program for lack of compliance. She had missed fifteen days of dosing with methadone, did not attend any group counseling sessions, and only attended one individual session. Thereafter, Allison declined the offers of the Division of Child Protection and Permanency (Division) to help her maintain sobriety.

In December 2017, Allison, then thirty-nine weeks pregnant with Ella, went to a hospital in Pennsylvania. She tested positive for amphetamines and marijuana but signed herself out of the hospital against medical advice. Shortly thereafter, Allison went to another hospital, St. Luke's Hospital in Pennsylvania, where she gave birth to Ella. At St. Luke's, Allison tested positive for amphetamines and methadone. She was also found to have an electronic cigarette or vaping pen, and she threatened hospital staff when they confiscated that device.

A-2491-18T4

At birth, Ella tested positive for amphetamines, methamphetamines and methadone. Medical records from St. Luke's also showed that Ella's umbilical cord contained amphetamines, marijuana, methadone, opioids, and morphine. The child was diagnosed with mild NAS and the hospital monitored Ella for five days before releasing her. Fortunately, Ella did not experience any withdrawal symptoms.

A Division worker went to St. Luke's and met with Allison. Allison acknowledged that both she and Ella had tested positive for amphetamines, but she denied using that drug. She did admit to smoking marijuana a week before Ella's birth, and she suggested that the marijuana may have been laced with methamphetamines.

With regard to the methadone, Allison claimed that she was attending a methadone treatment program. When the Division followed up with that treatment program, however, it learned, as noted earlier, that Allison had been discharged from the program in August 2017 for non-compliance.

B.H. was initially identified as the father of Ella. A subsequent test, however, revealed that he was not Ella's father. No father had been confirmed by the time of the fact-finding hearing.

A-2491-18T4

When the Division was unable to implement a safety plan to protect Ella, it removed Ella and placed her in a resource home. Thereafter, the family court granted the Division custody of Ella. The court also ordered Allison to comply with substance abuse evaluations and treatment.

After Ella's birth, Allison tested positive for various drugs on December 19, 2017, January 23, 2018, and February 6, 2018. Those drugs included amphetamines, marijuana, methamphetamines, methadone, and opioids.

The family court conducted a fact-finding hearing on May 10, 2018. One witness testified: a Division worker. The Division also introduced into evidence a number of documents, including medical records concerning Ella's birth. Allison did not attend the hearing and her counsel presented no evidence.

At the conclusion of the evidentiary hearing, the court issued an oral decision on the record. The court found that Allison had used unprescribed drugs both during and after Ella's birth. Relying on the medical records, the court found that Allison had obtained very little prenatal care and Ella was born with opioids, oxycodone, amphetamines and methadone in her system. The court also found that Ella had been diagnosed with mild NAS, but she had suffered no withdrawal symptoms.

A-2491-18T4

Based on those findings, the court concluded that the Division had proven Allison had abused or neglected Ella. In that regard, the court found that Allison had both exposed Ella to a significant risk of harm and had actually harmed Ella. In making those findings, the court seemed to accept Allison's claim that she was in a methadone treatment program while pregnant, but also found that Ella had been exposed to other drugs. In addition, the family court found that Allison posed a risk of substantial harm to Ella by continuing to use illicit drugs after Ella's birth.

Following the fact-finding hearing and several compliance reviews, the family court approved the Division's plan to seek the termination of Allison's parental rights so that Ella could be adopted. Accordingly, the court closed the Title 9 action and the Division filed a Title 30 action.

## II.

Allison now appeals from the May 10, 2018 order finding that she abused or neglected Ella. She argues that the family court erred because (1) there was insufficient evidence to establish that Ella was abused or neglected, and (2) it relied on incompetent, hearsay evidence contained in the hospital records. In making those arguments, Allison contends that the court improperly focused on her past behavior, erred in finding actual harm or future risk to Ella without

6                                                                 A-2491-18T4

expert testimony, and there was no evidence establishing that Allison failed to exercise a minimum degree of care for Ella. The substantial credible evidence at the fact-finding hearing, coupled with the law, rebut all of those arguments.

A.

The scope of our review of an appeal from an order finding abuse or neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008)). We will uphold the trial judge's factual findings and credibility determinations if they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (first citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993); then citing Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)). Accordingly, we will only overturn the judge's findings if they "went so wide of the mark that the judge was clearly mistaken." Ibid. (citing J.T., 269 N.J. Super. at 188-89). We do not, however, give "special deference" to the trial court's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)). Consequently, we apply a de novo standard of review to legal issues. Id. at 245-46.

A-2491-18T4

The adjudication of abuse or neglect is governed by Title 9, which is designed to protect children. N.J.S.A. 9:6-1 to -8.114. Under Title 9, a child is abused or neglected if:

> [a] parent or guardian . . . creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ . . . or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c).]

Thus, abuse or neglect can be based on either (1) actual harm or (2) substantial risk of harm. The protection of the abuse and neglect statute "is limited to the condition of a child after birth." N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 22 (2013) (citing N.J. Div. of Youth and Family Servs. v. L.V., 382 N.J. Super. 582, 590 (Ch. Div. 2005)).

> [Therefore,] the primary question under Title 9 is whether [the child], as a newborn, "ha[s] been impaired" or was in "imminent danger of becoming impaired" as a result of his [or her] mother's failure to exercise a minimum degree of care by unreasonably

8

> inflicting harm or allowing a "substantial risk" of harm to be inflicted.
>
> [Ibid. (quoting N.J.S.A. 9:6-8.21(c)(4)(b)).]

"If an expectant mother's drug use causes actual harm to the physical, mental, or emotional condition of a newborn child, a finding of abuse or neglect is appropriate." Id. at 8.

Nevertheless, "not every instance of drug use by a parent during pregnancy, standing alone, will substantiate a finding of abuse and neglect in light of the specific language of the statute." Id. at 23; see also id. at 23 n.3 (noting that New Jersey has not joined those states whose laws treat prenatal drug use as per se child abuse); N.J. Div. of Youth & Family Servs. v. N.D., 435 N.J. Super. 488, 494 (App. Div. 2014) (same). Actual harm under the statute can be established by offering proof that a child suffered drug "withdrawal symptoms at birth" or by "showing evidence of respiratory distress, cardiovascular or central nervous system complications, low gestational age at birth, low birth weight, poor feeding patterns, weight loss through an extended hospital stay, lethargy, convulsions, or tremors." A.L., 213 N.J. at 22-23 (citing In re Guardianship of K.H.O., 161 N.J. 337, 349-50 (1999)). Proof of actual harm "may come from any number of competent sources including medical and

hospital records, health care providers, caregivers, or qualified experts." Id. at 23.

Our Supreme Court has clarified that, under certain circumstances, proof of prenatal drug use coupled with the fact that a newborn suffered withdrawal symptoms may not be sufficient to establish abuse and neglect. See N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 168 (2014). Those circumstances require proof that the mother was (1) participating in a bona fide treatment program, (2) prescribed methadone by a licensed healthcare professional, (3) after full disclosure to that professional. Ibid. In that regard, the Court held,

> [A]bsent exceptional circumstances, a finding of abuse or neglect cannot be sustained based solely on a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program prescribed by a licensed healthcare professional to whom she has made full disclosure. In this case, a finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b) required proof that [the mother] unreasonably inflicted harm on her newborn and did so, at least, by acting with gross negligence or recklessness.
>
> [Id. at 168-69.]

We agree that there is insufficient credible evidence to show that Ella suffered actual harm. The evidence does, however, establish that Allison failed

to exercise a minimum degree of care and exposed Ella to a substantial risk of harm.

The failure to exercise a "minimum degree of care" refers to "conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." Ibid. A parent fails to exercise a minimum degree of care if, despite being "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

After birth, Ella tested positive for amphetamines and methadone. Her umbilical cord also contained amphetamines, marijuana, methadone, opioids, and morphine. She was diagnosed with mild NAS. She suffered no withdrawal symptoms, but the hospital monitored her for five days. That evidence establishes that Ella was exposed to a substantial risk of harm from Allison's drug use. Moreover, Allison was well-aware of the substantial risk of harm. Her prior drug use had resulted in her second child, Sam, being born with drugs in his system and Sam had suffered from drug withdrawal.

The family court also found that Allison's continued use of unprescribed drugs after Ella's birth posed a substantial risk of harm to Ella. That finding is also supported by substantial credible evidence. Allison was not capable of providing unsupervised care to Ella after her birth. She was referred to treatment, but she failed to comply with that treatment. She tested positive for amphetamines, methamphetamines, opioids, and marijuana three times in January and February 2018. As a consequence, Allison could not act as a caregiver to Ella because her continued drug use posed a substantial risk of harm to Ella. See N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 331 (App. Div. 2011) (holding that infants are "vulnerable to the slightest parental misstep" and noting that the risk of parental drug use varies with the age of the child).

## B.

Neither the credible facts nor the law support any of Allison's arguments. As already summarized, there was substantial credible evidence that Allison failed to provide a minimum degree of care to Ella and exposed her to a substantial risk of harm. Allison argues that under Y.N. and V.T. the finding of abuse and neglect should be reversed. We disagree.

Allison's reliance on Y.N. is misplaced. In Y.N., the sole drug identified as causing the withdrawal symptoms was methadone. Id. at 170. The court accepted Y.N.'s testimony that she was taking methadone as part of a treatment program she entered prior to giving birth. Id. at 169-70. Here, in contrast, there was no evidence in the record that Allison was prescribed methadone in conjunction with a bona fide treatment program or that her use of methadone during her pregnancy was authorized by a qualified professional after full disclosure. The only evidence concerning a methadone treatment program was a claim that Allison made to a Division worker. Allison herself did not testify. Her unsubstantiated claim is insufficient to establish that she was in a qualified methadone treatment program.

Allison's reliance on V.T. is also misplaced. In that case, we held that V.T.'s use of illegal drugs approximately two days prior to two supervised visits with an eleven-year-old child did not constitute neglect as a matter of law. V.T. was not visibly impaired and behaved appropriately at those visits. V.T., 423 N.J. Super. at 331. In that regard, we observed that conduct that did not pose a substantial risk to an eleven-year-old might pose a substantial risk to an infant. Ibid. Here, Ella is "vulnerable to the slightest parental misstep." Ibid.

Therefore, we discern no error in the family court's determination that Allison's repeated use of drugs after Ella's birth posed a substantial risk of harm to Ella.

We also reject Allison's argument that expert testimony was necessary to establish a substantial risk of harm to Ella. We grant substantial deference to a trial judge's evidentiary rulings. N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010). Rule 5:12–4(d) permits the Division to introduce "reports by staff personnel or professional consultants" into evidence provided the documents satisfy the requirements of the business records exception and are trustworthy. N.J.R.E. 803(c)(6) and 801(d); N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 129-30 (App. Div. 2010).

Drug testing does not entail "the exercise of subjective judgement" rather, it is a "straightforward, simple diagnosis based upon objective criteria." N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 174-75 (App. Div. 2012). The family court did not abuse its discretion by admitting the medical records into evidence under Rule 803(c)(6). As already noted, expert testimony was also not required to determine whether the level of drugs in Allison's system was sufficient to expose Ella to a substantial risk of harm. See V.T., 423 N.J. Super. at 331.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2491-18T4