# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4793-16T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.N.M.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF T.M.,

     a Minor.

_____

Submitted September 17, 2018 – Decided October 2, 2018

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0115-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer M. Kurtz, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Chanel J. Van Dyke, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Toya Davis, Designated Counsel, on the brief).

PER CURIAM

Defendant N.N.M. (Nina)[1] appeals from a June 1, 2017 order by Judge Anthony V. D'Elia terminating her parental rights to her then two-year-old daughter T.M. (Tracy).[2] We reject Nina's contentions that the Division of Child Protection and Permanency (Division) failed to meet its statutory burden under each prong of the best interests test, N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence.

Our review of trial judges' decisions are limited. We defer to the expertise of Family Part judges, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are

---

[1]  We use acronyms and pseudonyms to protect the identities of the parties involved.

[2]  The order also terminated the parental rights of defendant T.R., Tracy's putative father, who repeatedly failed to attend paternity testing scheduled by the Division and did not file an appeal.

bound to their factual findings when supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006).

Judge D'Elia carefully reviewed the evidence presented and explained in an oral decision rendered the same day as his order that the Division had met, by clear and convincing evidence, all of the legal requirements for a judgment of guardianship. The decision tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of DMH, 161 N.J. 365 (1999), and New Jersey Division of Youth & Family Services v. F.M., 211 N.J. 420 (2012), and is supported by substantial and credible evidence in the record. We, therefore, affirm substantially for the reasons the judge expressed in his well-reasoned decision. We add the following remarks as to each prong.

As to prong one, the Division must prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "[T]he relevant inquiry focuses on

3

the cumulative effect, over time, of harms arising from the home life provided by the parent."  M.M., 189 N.J. at 289.

"Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights."  In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (citing In re Guardianship of J.C., 129 N.J. 1, 18 (1992)).  As a result, "courts must consider the potential psychological damage that may result from reunification[,] as the 'potential return of a child to a parent may be so injurious that it would bar such an alternative.'"  N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 480-81 (App. Div. 2012) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 605 (1986)).

"The absence of physical abuse or neglect is not conclusive."  A.W., 103 N.J. at 605 (quoting In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977)).  "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child."  DMH, 161 N.J. at 379.  "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect."  Id. at 383.

A-4793-16T3

Nina argues the judge's finding that Tracy's safety, health, or development has been or will continue to be endangered by her relationship with her mother is not supported by substantial credible evidence. She claims the judge did not apply the statutory requirements of N.J.S.A. 30:4C-15.1(a), but instead applied the standard for termination of parental rights applicable in private adoption cases. She also argues there was no evidence that her drug use ever harmed Tracy or might cause her future harm. We disagree.

The Division introduced sufficient documentary evidence and the testimony of Nina's caseworker and its psychological/bonding expert, Dr. Robert Kanen, to support its contention that Nina's long-standing substance abuse history harmed Tracy. This credible evidence supports the judge's finding that Nina harmed Tracy by prioritizing her substance abuse at the expense of parenting.

Although Tracy did not display withdrawal at birth, her positive test for PCP resulted in her being removed from Nina two days thereafter. In fact, Nina admitted to using PCP during her pregnancy. This was of no surprise because prior to Tracy's birth, Nina had an extended history with the Division pertaining to her inability and unwillingness to address her substance abuse that had previously led to the Division being awarded custody of her three older

daughters,[3] and eventually the termination of parental rights to the youngest of the three.

Between Tracy's birth on August 4, 2015, and the two-day guardianship trial in late May 2016, Nina completed a twenty-eight-day substance abuse inpatient program at Turning Point. However, she continued to abuse substances and not comply with the plan that could have led to her reunification with Nina. The Division made repeated efforts to contact her, but she failed to respond and repeatedly missed re-referrals for treatment by her certified alcohol and drug counselor. Indeed, Nina tested positive for PCP immediately following a compliance hearing five months before the guardianship trial, despite claiming to have last used substances three months prior.

Thus, we agree with Judge D'Elia's finding that Nina's "inattentiveness and inability or unwillingness to properly parent [Tracy] as a result of her substance abuse will likely have continuing deleterious effects on [Tracy.]" In applying the best interests standard under N.J.S.A. 30:4C-15.1(a) to evaluate the harm caused to Tracy by Nina's substance abuse, he properly found that Nina failed to maintain a parental relationship with Tracy and that Nina's positive drug screens throughout her five-year involvement with the Division evinced

---

[3] They were born January 14, 2001, January 29, 2013, and October 18, 2013.

her unwillingness or inability to place the needs of Tracy over her own want for substances.

As to prong two, the Division must prove that the parent is "unwilling or unable to eliminate the harm facing the child[ren] or is unable or unwilling to provide a safe and stable home . . . and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). That harm may include evidence that separating the children from their resource parents "would cause serious and enduring emotional or psychological harm . . . ." Ibid.

The Division can establish the second prong by proving that a "child will suffer substantially from a lack of stability and a permanent placement[,] and from the disruption of" a bond with the resource parents. K.H.O., 161 N.J. at 363. Because they are related, evidence supporting the first prong may also support the second prong "as part of the comprehensive basis for determining the best interests of the child." DMH, 161 N.J. at 379.

Nina contends the record is devoid of substantial credible evidence that she is unable or unwilling to eliminate harm to Tracy. She maintains she is able to provide a safe and stable home but needs time to complete proper inpatient treatment. We disagree.

Judge D'Elia found that Nina was "unable or unwilling to deal with her issues," as evidenced by her long history of allowing her continued drug use to take propriety over any parenting skills or responsibilities, her "fail[ure] to maintain any kind of regular relationship with [Tracy] despite being offered numerous opportunities to do so," and her "fail[ure] to stay in contact with the Division." The judge found that despite losing custody of her three older daughters due to her drug habit, Nina's "still couldn't beat the . . . habit." The judge's findings were, therefore, well-supported by credible evidence in the record.

We acknowledge that trying to arrest a long-standing substance abuse is an arduous task and not in and of itself a basis to terminate parental rights. N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 331 (App. Div. 2011) ("[a]ddiction is not easy to successfully remediate; a failure to successfully defeat drug addiction does not automatically equate to child abuse or neglect.") However, as the judge tellingly recognized, the record shows that Nina did not take her drug addiction very seriously. Her drug addiction consumed her ability to care for Tracy as well as her other daughters. There is no reasonable indication that she has taken steps to change her behavior. Hence, we have no concern with the judge's determination that the Division proved Nina

is unwilling or unable to eliminate the harm facing Tracy, and that a permanent placement was needed for her daughter's healthy development.

As to prong three, the Division is required to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,] and the court [will] consider[] alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3). This third "prong of the [best interests of the child] standard contemplates efforts that focus on reunification of the parent with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., 161 N.J. at 354.

Nina again contends the judge's decision is not supported by substantial, credible evidence as the Division failed to refer her to the treatment programs she needed, and did not consider Kinship Legal Guardian (KLG) alternatives such as Tracy's grandmothers and maternal aunt before terminating her parental rights. We disagree.

Judge D'Elia found that the Division made reasonable efforts to help Nina achieve reunification with Tracy by correcting the unfortunate circumstances that led the agency to take custody of Tracy. Based upon our review of the record, the judge's finding is supported by credible, substantial evidence that the

A-4793-16T3

Division offered Nina necessary services – substance abuse counseling and inpatient/outpatient treatment programs, psychological counseling, and visitation with Tracy – which she failed to take advantage of.

As to avoiding the termination of parental rights by placing Tracy with family members as a KLG, the judge correctly found the Division established that there were no family members in a position to properly care for Tracy and raise her in a safe and stable environment. The Division ruled out Nina's mother and sister because they lacked the capability to care for Tracy; not because they were not presented with an option for daycare as Nina contended. Tracy's paternal grandmother was ruled out because two adults with parole and probation records for drug-related convictions were listed as residing in her household.

Finally, as to prong four, the Division must prove by sufficient credible evidence that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The prong "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 609 (2007).

Nina argues the Division failed to prove that the termination of her parental rights will do more harm than good to Tracy. Citing N.J. Div. of Youth

& Fam. Servs. v. I.S., 202 N.J. 145 (2010), she maintains the Division created Tracy's connection with her foster parent by disregarding the family members who were willing to care for Tracy from the outset of her removal. Again, we disagree.

We agree with the Division's position that Nina's reliance on I.S. is misplaced. There, unlike here, the Court found that the DYFS'[4] parenting visitation plan was inadequate and, as a result, the bonding assessment was a foregone conclusion. I.S., 202 N.J. at 181-82. Moreover, contrary to the defendant in I.S., Nina made no effort to maintain a relationship with Tracy because she repeatedly failed to attend visitation sessions that were arranged by the Division. See ibid.

Relying on the Kanen's unrefuted expert testimony, Judge D'Elia found that the severe harm by removing Tracy from her resource parent, who had raised her since she was two days old, could neither be mitigated nor eliminated by Nina. Hence, we see no reason to disturb the judge's prong four finding given: Kanen's opinion; the absence of any bond between Nina and Tracy; the lack of any factual basis for Nina's argument; and the strong bond that Tracy has with her resource parent.

---

[4] The predecessor agency for the Division.

A-4793-16T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

12