# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1635-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.M.,

      Defendant-Appellant,

and

L.T.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.M.,

      a Minor.

_____

Submitted September 24, 2018 – Decided  October 31, 2018

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FG-13-0057-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong V. Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Valeria Dominguez, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (David B. Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant J.M. appeals from the Family Part's October 5, 2017 judgment terminating his parental rights to his daughter A.M. (Abby).[1] Defendant contends the Division of Child Protection and Permanency (the Division) failed to prove by clear and convincing evidence all four prongs of the statutory best-interests-of-the-child standard contained in N.J.S.A. 30:4C-

---

[1] We use initials to maintain the confidentiality of the parties involved. R. 1:38-3(d). The judgment also terminated the parental rights of Abby's mother, L.T. (Lisa), who participated at trial but has not appealed.

15.1(a).[2]  The Division and Abby's Law Guardian urge us to affirm the termination judgment.

I.

The Division received a referral when Abby was born in October 2015 because Lisa had a history of substance abuse, including a referral to the

---

[2]  Under the statutory best-interests-of-the-child test, the Division must prove by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a); see also In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999).]

Division in May, while she was pregnant. Lisa acknowledged she was attending a methadone program, but she and her mother K.T. (Karen), with whom Lisa resided at the time, denied any current substance abuse. When defendant appeared at the hospital the next day, suspicions arose that he brought drugs with him, and he and Lisa appeared to be "high." For Abby's safety, a doctor ordered hospital staff to place her in the nursery, away from her parents, and the staff ordered defendant to leave the hospital.

The situation worsened. Hospital workers believed defendant brought drugs into the hospital again. He had visible track marks on his arms, blood was found on the walls and floor of the bathroom in Lisa's room and a used syringe was found in Lisa's room. Staff again ordered defendant out of the hospital. A few days later, defendant admitted to having used heroin, and a urine screen revealed the presence of benzodiazepines, alprazolam, cocaine, cocaine metabolite, opiates, and morphine. Lisa refused to stop breastfeeding Abby and to permit routine bloodwork. Abby began showing signs of withdrawal. In November, the Division filed a complaint seeking care and custody of Abby, which the judge granted, and Abby was placed temporarily with Karen.

During the ensuing months, both defendant and Lisa continued to submit positive drug screens, and their visitation with Abby was intermittent at best. Convinced that Karen was "enabling" Lisa's behavior, the Division removed Abby and placed her in a resource home in April 2016. The Division also considered C.M. (Cathy), defendant's sister, for possible placement.

Defendant's continued drug use is well-documented in the Division's records admitted in evidence at trial. He was also arrested on more than one occasion during the fall of 2016. Defendant told the Division in November that he had quit his job and was living in a homeless shelter. In December, the court approved the Division's permanency plan for termination of parental rights, and the Division filed its guardianship complaint in February 2017.

In the interim, in January 2017, defendant was arrested and remained incarcerated until April. During the following months, defendant failed to appear for substance abuse evaluations, fell asleep in a Division restroom during a visit with Abby and tested positive for cocaine, opiates, benzodiazepines and barbiturates. He was arrested again in July.

The guardianship trial commenced in October 2017. The Division presented the expert testimony of Dr. Alan Lee, a psychologist who had performed an evaluation of defendant, as well as bonding evaluations of Abby

and defendant, and Abby and her resource parents. Dr. Lee diagnosed defendant with a history of polysubstance abuse, anxiety disorder and impulse control disorder. He determined "within a reasonable degree of psychological certainty" that defendant could not offer Abby "nurturance, protection, [and] stability." Dr. Lee also concluded that Abby "ha[d] an ambivalent and insecure attachment" to defendant, and "there [was] a low risk" she would suffer "severe and enduring harm if her relationship with [defendant] [was] permanently ended." Dr. Lee further concluded it would be in Abby's best interest to remain in the care of her resource parents because they formed a significant and positive bond and there was a significant risk that Abby would suffer "severe and enduring harm" if she was separated from them.

The Division's permanency caseworker testified regarding contacts with the family and the removal of Abby from Karen's care. She further testified that Cathy was vetted as a possible placement alternative, but that Cathy already had a child, was pregnant, and the family lacked "financial stability." The caseworker testified regarding the different services offered to defendant. She noted that defendant failed to engage in "parenting classes." Although she referred defendant to substance abuse programs, "he wouldn't sign a release of information at the program[s] he alleged he was [attending]." Therefore, the

6

caseworker could not confirm defendant's attendance. Meanwhile, defendant continued to test positive for various drugs, including heroin, on multiple occasions.

The Division's adoption caseworker testified that defendant consistently missed scheduled appointments with substance abuse counseling programs. By July 2017, defendant stopped attending his visits with Abby and was ignoring all communication attempts made by the Division.

Defendant did not testify or present any witnesses on his behalf. In an oral opinion that immediately followed trial, the judge concluded the Division had proven all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence and entered the judgment under review. This appeal followed.

## II.

"We will not disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We defer to the factual findings of the trial judge, who had "the opportunity to make first-hand credibility judgments about the witnesses . . . [and] ha[d] a 'feel of the case' that can never be realized by a review of the cold record."

A-1635-17T1

Ibid. (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We accord even greater deference because of "the family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552-53 (2014) (quoting Manalapan Realty, LP v Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"The focus of a termination-of-parental-rights hearing is the best interests of the child." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citation omitted). The four statutory prongs "are neither discrete nor separate. They overlap to provide a composite picture of what may be necessary to advance the best interests of the children." M.M., 189

N.J. at 280 (emphasis in original) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005)).

Under prong one, "the Division must prove harm that threatens the child's health and will likely have continuing deleterious effects on the child." N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 25 (2013) (citation omitted). The Division need not "wait until a child is actually irreparably impaired by parental inattention or neglect." F.M., 211 N.J. at 449. While "not all instances of drug ingestion by a parent will substantiate a finding of abuse or neglect," A.L., 213 N.J. at 24 (quoting N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 332 (App. Div. 2011)), ongoing irresponsible behavior by a drug-addicted parent, and his or her failure to take advantage of services offered by the Division, can meet the burden of proof. N.J. Div. of Youth & Family Servs. v. L.M., 430 N.J. Super. 428, 444 (App. Div. 2013). In addition, by a parent's withdrawal of "solicitude, nurtur[ing] and care" harms the child. In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999) (citation omitted).

Defendant claims the supporting evidence as to prong one was insufficient, because, although he admittedly suffers from intractable addiction

and mental health problems, he attempted to address them, and his contacts with Abby were "positive." We disagree.

The judge's findings on prong one centered on defendant's "continued use of drugs," and Dr. Lee's credible testimony and opinion that defendant was unable to care for himself, "let alone taking care of a two year old." Defendant's unabated substance abuse history frequently marred supervised visitations and continued throughout the litigation. Defendant was repeatedly incarcerated. The evidence in this case was more than adequate.

The second prong "relates to parental unfitness," which may be established by demonstrating that "the parent is 'unwilling or unable to eliminate the harm'" or that "the parent has failed to provide a 'safe and stable home'" and "a 'delay [of] permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)); see also F.M., 211 N.J. at 451 ("Prong two may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from the disruption of [the] bond with foster parents.'") (alteration in original) (quoting K.H.O., 161 N.J. at 363).

Defendant argues the judge's conclusion that he was "unwilling or unable to eliminate the harm" to Abby was "unsupported" by the record. We

again disagree. The judge found defendant and Lisa had "done nothing to . . . alleviate th[e] harm and put them[selves] in a position to care for [Abby], despite . . . yeoman efforts . . . by the Division in trying to get them to comply with services." Simply put, whatever efforts defendant made were unsuccessful, and it was not likely he would stop exposing Abby to the risk of harm in the reasonably foreseeable future.

N.J.S.A. 30:4C-15.1(a)(3) requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and the court to "consider[] alternatives to termination of parental rights." "Experience tells us that even [the Division's] best efforts may not be sufficient to salvage a parental relationship." F.M., 211 N.J. at 452. Moreover, "[e]ven if the Division ha[s] been deficient in the services offered to" a parent, reversal is not necessarily "warranted, because the best interests of the child controls" the ultimate determination. N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super. 576, 621 (App. Div. 2007).

Defendant contends the Division failed to provide financial assistance so he could engage in inpatient substance abuse treatment. He also argues that the Division failed to adequately consider relatives, specifically, Karen and

Cathy, as placement resources. Defendant claims the Division wrongfully removed Abby from Karen's care early in the litigation, and it ruled out Cathy based solely on her lack of income.

These arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The judge said he did not "remember ever seeing a case where the Division has provided this many services, so many attempts to get [defendant and Lisa] to comply with drug treatment . . . ." In addition, the Division's decision to rule out Cathy was not based solely on her lack of income, but rather on the likelihood that Cathy's home situation would make her unlikely to provide appropriate care for Abby.

The fourth prong serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211 N.J. at 453. "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108. Typically, "the [Division] should offer testimony of a well-qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting M.M., 189 N.J. at 281).

12

Defendant argues that Dr. Lee ignored his own observations of the warm relationship defendant shared with Abby during visitation, and, therefore, his opinion about the effect of termination upon Abby was suspect. However, the judge found Dr. Lee credible and substantially relied upon his expert opinion that defendant, who had never cared for Abby, had no "vested bond" with the child, whereas Abby's foster parents provided the only home the child had known. Under the fourth prong, "an important consideration is '[a] child's need for permanency.'" Ibid. (quoting M.M., 189 N.J. at 281). The judge found, and we agree, that Abby's interests were best served by a permanent home, and that termination of defendant's parental rights would not do more harm than good.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1635-17T1