# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0339-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

P.A.,

     Defendant-Appellant,

and

B.O.,

     Defendant.

_____

IN THE MATTER OF B.O.,

     a Minor.

_____

Submitted October 2, 2019 – Decided October 8, 2019

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0145-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Edward Kleiman, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jessica Faustin, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant P.A. appeals the trial court's February 27, 2018 finding that she abused or neglected her son when she chose to get into a vehicle with her boyfriend who had been drinking; proceeded to assault her boyfriend while her son was in the car; and got into an altercation with police while holding her son, causing her to drop her son onto the street. The police arrested P.A. and her boyfriend and referred the matter to the New Jersey Division of Child Protection and Permanency (the Division). Division personnel instituted a Dodd Removal in accordance with N.J.S.A. 9:6-8.29 and filed a complaint seeking, in part, that the trial court determine that appellant abused or neglected her son. After trial, the court found that appellant abused or neglected her son within the meaning

2

of N.J.S.A. 9:6-8.21(c)(4).  After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following facts from the record.[1]  This matter arises from an incident that occurred on September 3, 2017.  On that date, the Bogota Police Department received a complaint of a hit-and-run around 2:30 a.m.  Later, the police responded to a complaint of a roadside domestic violence incident involving a car that matched the description of the car involved in the hit-and-run.  At the scene, P.A. and her boyfriend were engaged in a physical altercation, during which P.A. hit her boyfriend.  After the police arrived, P.A. picked up her one-year-old son and attempted to leave, exchanged words with the responding officers, and then dropped her son in the street, requiring his transport to the hospital.

After the incident, officers arrested both P.A. and her boyfriend, and P.A.'s son was sent to stay with his paternal grandparents.  P.A. was charged with endangering the welfare of a child and assaulting a police officer, and her boyfriend was charged with driving while intoxicated.  The Division arrived at

[1]  Preliminarily, we note that B.O., the child's father, was not a party to this litigation because he was in jail for reasons unrelated to this case.

A-0339-18T3

the police station around 5 a.m. to interview P.A. and her boyfriend. The Division also visited the child, who sustained no marks or bruises and was medically cleared.

On February 27, 2018, Judge Lois Lipton held a fact-finding hearing to determine whether P.A.'s actions on September 3, 2017 constituted abuse or neglect of her son. The Division called as its first witness Claudia Valencia, the Division Investigator who interviewed P.A. on September 6, 2017. Ms. Valencia testified as to her interview with P.A. concerning the events of September 3rd. According to P.A., she and her son had gone out to a restaurant with her parents, and her boyfriend later joined them. P.A. and her boyfriend had a few drinks prior to departing for a friend's apartment, but P.A. believed that her boyfriend was not intoxicated. On the way to her friend's apartment, P.A.'s boyfriend hit a parked car and then drove away from the accident. P.A. claimed that she then asked her boyfriend several times to pull over, and when he finally stopped the car, P.A. went to take her son but got into a physical altercation with her boyfriend.[2] P.A. explained that when police arrived, she

---

[2] According to Ms. Valencia's investigation summary, P.A. alleged that after pulling the car over, her boyfriend had "picked up [her son] and would not give him back."

A-0339-18T3

attempted to walk away, but the officers followed her and began to "tug" and "push" her, causing her son to fall.[3]

Ms. Valencia testified on direct that P.A. was "substantiated for family violence" for this altercation, and the Division made this finding while considering both aggravating factors, including the child's removal and his "tender age," and mitigating factors, including the negligible impact that the supposed abuse or neglect had on the child.

The Division next attempted to call as a witness Sergeant Lynch of the Bogota Police Department, but he never appeared for the hearing despite being subpoenaed. The Division instead recalled Ms. Valencia to authenticate the Division's investigation and screening summaries, which Judge Lipton admitted into evidence as Division business records, subject to applicable hearsay exceptions.[4]

Judge Lipton found that the uncontroverted evidence presented was sufficient to support a finding of abuse and neglect. The judge found that P.A.

---

[3] According to Ms. Valencia's investigation summary, P.A. expressed that "the police officer told her to stop however she ignored him and kept walking with [her son]."

[4] Judge Lipton noted that because Sergeant Lynch failed to appear to provide testimony, any statements made by the police officers contained in the reports would be hearsay.

"had at least a margarita and a beer," and she "chose to get in a car with [a person who was drinking] . . . with . . . an infant."  Judge Lipton further found that P.A. scuffled with "her friend who was driving after drinking and had hit a parked car and refused to pull over or stop the car when she requested it[,]" and that P.A. "[b]y her own admission . . . hit the driver."  Judge Lipton also emphasized that P.A. was combative with police, stressing that "[n]o reasonable person with a thirteen-month-old infant would engage in a tugging session with police with a baby in her arms."  Given that P.A. dropped her son onto the street as opposed to "a carpet in a house," the judge determined that the "child was at substantial risk of harm."

Judge Lipton specifically stated that the "tussle in the car" may not have "rise[n] to the level of willful and wanton conduct," but P.A. should have immediately cooperated with police, regardless of whether the police touched her first, "for the safety of the baby," and further stated that her actions therefore were willful or wanton.  The judge found that P.A.'s failure to cooperate with law enforcement evinced "that her judgment was so off and caused that baby to fall."  She showed "reckless disregard at that moment for the safety of her baby [because] she should have welcomed the police if she was afraid of the conduct of the driver."  Judge Lipton concluded that P.A.'s own recitation of the facts

6

A-0339-18T3

alone showed, by a preponderance of the evidence, that P.A. neglected or abused her son on September 3, 2017.  The judge entered an order memorializing those findings.

This appeal ensued.  On appeal, P.A. argues that the testimony of Ms. Valencia, coupled with P.A.'s own statements, were insufficient to permit a finding that P.A. abused or neglected her son as contemplated by N.J.S.A. 9:6-8.21(c)(4)(b).

II.

The appellate standard of review of the "fact-findings of the Family Part judge" is strictly limited.  N.J. Div. of Youth and Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)).  "[F]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence."  N.J. Div. of Youth and Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  "[A]n appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Cesare, 154 N.J. at 412

A-0339-18T3

(second alteration in original) (quoting <u>Rova Farms</u>, 65 N.J. at 484).  However, we need not defer to the trial court on questions of law.  <u>N.J. Div. of Youth and Family Servs. v. V.T.</u>, 423 N.J. Super. 320, 330 (App. Div. 2011).

III.

P.A. contends her conduct resulted in no actual harm to her son, and the evidence presented in this case is insufficient to support a finding of abuse or neglect under N.J.S.A. 9:6-8.21 to -8.82.  P.A. explains that the only evidence available for Judge Lipton to consider was Ms. Valencia's testimony, which standing alone was insufficient to support a finding of abuse or neglect.

P.A. also argues that Judge Lipton's opinion makes clear that there was insufficient evidence to conclude that P.A. knowingly chose to enter a vehicle with an intoxicated driver.  P.A. claims, by Judge Lipton's own findings, her request that her boyfriend pull over constituted "reasonable actions of a mother attempting to protect her child from harm," and her conduct was not willful or wanton.  P.A. explains that she attempted to remedy the situation once she realized that her boyfriend was not fit to drive.

P.A. further maintains that the record contained insufficient evidence to support Judge Lipton's finding that her conduct with the police officers was unreasonable.  P.A. stresses that the police initiated contact with her and acted

8

in an "inappropriate aggressive manner, and that [she] acted reasonably, fearing physical harm to herself and her child."  P.A. argues that due to the lack of evidence concerning the officers' actions, Judge Lipton's determination that no reasonable person would have acted as P.A. had was not rooted in fact and constituted an improper inference.

An "abused or neglected child" is

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21(c)(4).]

"Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation." G.S. v. Dep't of Human Servs., Div. of Youth and Family Servs., 157 N.J. 161, 181-82 (1999).  Failure to exercise a "minimum degree of care" requires "conduct that is grossly or wantonly negligent, but not necessarily intentional." Dep't of Children and Families, Div. of Youth and Family Servs. v. T.B., 207 N.J. 294, 299-300 (2011) (quoting G.S., 157 N.J. at 178).  "[T]he

9

concept of willful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others." G.S., 157 N.J. at 179 (citing Fielder v. Stonack, 141 N.J. 101, 124 (1995)).

New Jersey courts do not delineate all of the scenarios that would equate to a failure to exercise a "minimum degree of care," but "the inquiry should focus on the harm to the child and whether that harm could have been prevented had the guardian performed some act to remedy the situation or remove the danger." Id. at 182. "[A] guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181 (citing Sellnow v. Perales, 158 A.D.2d 846, 847 (N.Y. 1990)). In deciding whether a child has been abused or neglected, courts "must base [their] findings on the totality of the circumstances . . . ." V.T., 423 N.J. Super. at 329.

The court should focus on the "parent's conduct at the time of the incident to determine if a parent created an imminent risk of harm to a child." Dep't of Children and Families, Div. of Child Prot. and Permanency v. E.D.-O., 223 N.J. 166, 189 (2015). A child need not be "actually irreparably impaired by parental inattention or neglect" for a court to find that a parent failed to exercise a

minimum degree of care.  See In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 616 n.14 (1986)).

We conclude that Judge Lipton's finding that P.A. abused or neglected her son is supported by ample, substantial, and credible evidence.  The judge found that, based on P.A.'s own statements, she failed to exercise a minimum degree of care based on the totality of the circumstances.  See V.T., 423 N.J. Super at 329.  These statements confirmed that P.A. knowingly entered a vehicle with someone who was drinking, while she herself was drinking, and in the same sequence of events, assaulted the driver and became entangled with police prior to dropping her son.  While P.A. may assert that Judge Lipton did not appropriately weigh the possibility that the police instigated the confrontation with her, Judge Lipton correctly found this point to be inconsequential, as she opined that "[P.A.] should have immediately cooperated" with the police and perhaps even welcomed police intervention if she was in a dispute with her boyfriend.  In this respect, the potential for harm to the child could have been prevented if P.A. merely acquiesced to the requests of law enforcement.  See G.S., 157 N.J. at 182.  We conclude that the trial judge's findings are supported

by the record and therefore her legal conclusions are unassailable. See Z.P.R., 351 N.J. Super. at 433.

To the extent we have not specifically addressed any remaining arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0339-18T3