# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2135-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.C.,

     Defendant-Appellant,

and

S.T., C.C. and M.T.,

     Defendants.

_____

IN THE MATTER OF G.C.,

     a Minor.

_____

Submitted May 19, 2020 – Decided June 30, 2020

Before Judges Fisher, Accurso, and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0177-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Caitlin Aviss McLaughlin, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Peter Damian Alvino, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E.K. Hirsch, Designated Counsel, on the briefs).

PER CURIAM

J.C. (Joseph), a father, appeals from an order finding he abused or neglected his son, G.C. (Guy).[1] Following an evidentiary hearing, the family court found that the then three-year-old child had been placed at substantial risk of harm because, while Guy was with him, Joseph was arrested in a stolen car, admitted he had used heroin earlier that day, and could not identify any relatives or adults who could care for Guy. We affirm because those facts establish that

---

[1] We use initials and fictitious names to protect the privacy interests and confidentiality of the record. See R. 1:38-3(d)(12).

Joseph failed to provide a minimal degree of care and placed Guy at substantial risk of imminent harm.

## I.

The facts were established at an evidentiary hearing where four witnesses testified: A State Police Trooper and three workers from the Division of Child Protection and Permanency (Division). Joseph did not appear at the hearing and his counsel called no witnesses.

On the evening of October 25, 2017, the trooper saw Joseph sitting in a car in the travel lane of a service area off the New Jersey Turnpike. The trooper recognized Joseph because Joseph had been arrested earlier that week for possession of a stolen vehicle, which he had allegedly rented from a friend. In that earlier incident, S.T. (Susan), who is the mother of Guy, was also arrested and held on a warrant. Susan was still in jail on October 25, 2017.

When the trooper questioned Joseph, he initially claimed the car belonged to his father and then asserted that it was a rental car. The trooper performed a license plate check and learned that the license plate did not match the vehicle. Joseph also provided the trooper with a false name by identifying himself with the name of his dead brother.

A-2135-18T4

The trooper testified that Joseph's behavior was "off," and he suspected that Joseph was under the influence of some substance. In response to further questioning, Joseph admitted that he had used heroin earlier that day. Joseph was given a field sobriety test, which he passed.

As the trooper was speaking with Joseph, a woman, later identified as Guy's aunt, came over. The aunt explained that she was traveling with Joseph and Guy, and she also admitted that she had used heroin earlier in the day. The State Police believed that the car was stolen, so Joseph and the aunt were arrested. The car was searched, and the police found drug paraphernalia and what appeared to be burglary tools.

Joseph and the aunt were charged with receiving stolen property, endangering the welfare of a child, possession of drug paraphernalia, and possession of burglary tools. Joseph told the trooper that he did not want to be arrested and asked for a break because Guy was in his care.

After taking Joseph into custody, the trooper notified the Division, and workers came out to the police barracks to interview Joseph and assess Guy. Guy was dirty and his clothes smelled of urine. When a Division worker interviewed Joseph, he admitted to using heroin that day. The worker asked Joseph if there were any relatives who could care for Guy, but at that time Joseph

did not provide her with any helpful information. Accordingly, the Division executed an emergent removal of Guy.

Thereafter, the Division conducted further investigations to try to identify a relative caregiver for Guy. Joseph told the Division that he wanted his parents, who lived in Florida, to care for Guy. The paternal grandparents, however, refused to provide the Division with their address until January 5, 2018.

At the conclusion of the hearing, on February 6, 2018, the family court made findings of fact and conclusions of law on the record. The court found the State Trooper and the Division worker who interviewed Joseph to be credible. The court then identified the relevant facts, which included that (1) Joseph and Guy were in a stolen vehicle and were stopped in a lane for moving vehicles, rather than parked; (2) Guy was in the front seat of the vehicle unrestrained and jumping up and down; and (3) Joseph admitted to using heroin earlier that day. The court then found that Joseph was aware that he risked arrest, reasoning that he likely knew the car was stolen since he rented it from the same person who rented him a stolen vehicle earlier that week. The court also found that Joseph knew that Susan was in jail and, therefore, there was no one available to care for Guy. Assessing the totality of those circumstances, the court found that Joseph had placed Guy at substantial risk of harm by being in a stolen car with drug

paraphernalia and knowing that if he were arrested, there would be no one available to care for Guy.

## II.

On appeal, Joseph makes two arguments, contending that the family court erred by (1) applying the wrong standard under N.J.S.A. 9:6-8.21(c)(4); and (2) considering Joseph's failure to have an available caregiver when he was arrested. Joseph argues that the court found only that Guy was at substantial risk of harm and did not find that the harm was imminent or that he acted grossly or wantonly. He also asserts that the law does not require him to be able to immediately identify an alternate caregiver since he could not anticipate that he would be arrested. We reject these arguments given the totality of the facts found by the family court.

The scope of our review of an appeal from an order finding abuse or neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008)). We will uphold the family court's factual findings and credibility determinations if they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (first citing In re Guardianship of J.T.,

269 N.J. Super. 172, 188 (App. Div. 1993); then citing Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)). Accordingly, we will only overturn the court's findings if they "went so wide of the mark that the judge was clearly mistaken." Ibid. (citing J.T., 269 N.J. Super. at 188-89). We do not, however, give "special deference" to the family court's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)). Consequently, we apply a de novo standard of review to legal issues. Id. at 245-46 (citation omitted).

The adjudication of abuse or neglect is governed by Title 9, which is designed to protect children. N.J.S.A. 9:6-1 to -8.114. Under Title 9, a child is abused or neglected if:

> [a] parent or guardian . . . creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ . . . or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c).]

The statute does not require the child to suffer actual harm. N.J.S.A. 9:6-8.21(c)(4). Instead, abuse or neglect is established when a child's "physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired." Ibid. When there is an absence of actual harm, but there exists a substantial risk of harm or imminent danger, the court must consider whether the parent exercised a minimum degree of care under the circumstances. G.S. v. Dep't of Human Servs., 157 N.J. 161, 171 (1999) (citing N.J.S.A. 9:6-8.21(c)(4)(b)).

The failure to exercise a "minimum degree of care" refers to "conduct that is grossly or wantonly negligent, but not necessarily intentional." Id. at 178 (citation omitted). "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." Ibid. (citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)). A parent fails to exercise a minimum degree of care if, despite being "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181 (citation omitted).

The Division must prove by a preponderance of the competent, material, and relevant evidence that a child is abused or neglected. N.J.S.A. 9:6-8.46(b).

That burden of proof requires the Division to demonstrate a "probability of present or future harm." N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 24 (App. Div. 2004). Title 9 cases are fact-sensitive, and the court should base its findings on the totality of the circumstances. N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011) (citation omitted).

The family court here found that, while Guy was with and in the care of Joseph, Joseph was in a stolen car, had drug paraphernalia and burglary tools in the car, admitted he had used heroin earlier in the day, and knew Susan was unavailable to care for Guy because she was in jail after they had both been arrested earlier that week for driving another stolen car. Those facts are all supported by substantial credible evidence in the record. Indeed, those facts were uncontroverted.

Moreover, those facts established that Joseph placed Guy at substantial risk of imminent harm. Joseph knew or should have known that he was engaged in illegal activity by driving a stolen car with drug paraphernalia and burglary tools. He also knew that he could be arrested for that activity. Indeed, he had been arrested earlier that week for being in another stolen car. Consequently, Joseph acted recklessly by placing Guy in such a situation.

Joseph argues that the family court erred because at the time of the hearing, Joseph had not yet been convicted for driving a stolen car. The family court did not rely on the pending criminal charges; rather, it correctly and appropriately relied on the unrebutted testimony by the trooper who testified that the car was stolen. At the hearing, Joseph did not dispute or offer any evidence to contest that he was in a stolen car.

The family court also appropriately considered that Guy was unrestrained in the front seat of the car. Joseph argues that the car was stopped and, therefore, Guy was not at risk. The trooper, however, testified that the car was in the travel lane of a service area on the New Jersey Turnpike. Accordingly, the facts established that Joseph had driven the car to the service area and would have continued driving if the trooper had not intervened.

We also reject Joseph's argument that the Division needed to present expert testimony that Joseph was impaired at the time of his arrest. In making that argument, Joseph relies on our decision in V.T., where we held that expert testimony was necessary to determine if a father presented a substantial risk of harm to his minor child when he tested positive for cocaine and marijuana at two supervised visits with the child. 423 N.J. Super. at 323, 330-31. The reasoning and holding in V.T. are not applicable to this case. Joseph was not

found to have abused or neglected Guy because he was under the influence of heroin. As already detailed, Joseph was found to have abused or neglected Guy under the totality of the circumstances. Those circumstances included that he was in a stolen car, had drug paraphernalia, had used heroin earlier that day, and had no plan for how Guy would be cared for if he was arrested.

In summary, we reject Joseph's argument that the family court used the wrong standard. While the court may not have used the words "imminent," "recklessly," or "wantonly," the totality of the court's findings met the governing standard.

Finally, we reject Joseph's argument that the family court improperly considered that Joseph had no plan for how Guy would be cared for if he were arrested. Given Joseph's recent arrest and that he was again driving a stolen car, Joseph acted recklessly and wantonly in not having a plan for how Guy would be cared for should he be arrested. After his arrest, Joseph could not identify for a Division worker any available adult caregiver for Guy. The Division worker also testified that Guy was very upset after he was removed because his father had been arrested. Those facts established that Joseph acted recklessly and failed to exercise a minimum degree of care by failing to ensure that someone was available to look after Guy. But for the intervention of the

11

Division, three-year-old Guy would have been left without any adult to care for him.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION